UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| PATRICK THOMAS TULLY,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Respondent. | Case No. CV 11-648-C-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Petitioner Patrick Thomas Tully's Petition for Review (Dkt. 1), filed December 21, 2011, seeking review of the Social Security Administration's final decision to deny his disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

On February 11, 2009, Patrick Thomas Tully ("Petitioner") applied for Social Security Disability Insurance Benefits, alleging a disability onset date of May 16, 2004, when he was 40 years old. (AR 93). Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 93, 95). Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On March 22, 2011, ALJ Marie Palachuk held a hearing at which time Petitioner, represented by attorney Paul Clark, appeared and testified, as did his wife, Frances Tully. (AR 51-92). Two medical experts, Dr. Donna Veraldi and Dr. Sterling Emery

**MEMORANDUM DECISION AND ORDER - 1**

Moore, and a vocational expert, K. Diane Kramer, also appeared and testified. (AR 51-92). At the time of the hearing, Petitioner had past relevant work as an auto detailer, sales person, laborer, machine set up operator, and pipe fitter helper (AR 28).

On April 21, 2011, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 14-30). Petitioner timely requested review from the Appeals Council on June 20, 2011 (AR 13). The Appeals Council then denied review on November 1, 2011 (AR 1) rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred by failing to properly weigh the treating psychologist's opinion and treating nurse practitioner's opinion as well as failing to properly weigh his own credibility.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

**MEMORANDUM DECISION AND ORDER - 2**

*Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

### III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner had not engaged in SGA after May 16, 2004, the alleged onset date.  (AR 19).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments - fibromyalgia, degenerative disc disease thoracic spine (mild); resting tremor of left hand; mild bilateral carpal tunnel syndrome; medial plica of the left knee; and anxiety disorder. (AR 19).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 20).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's

**MEMORANDUM DECISION AND ORDER - 5**

past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except he is able to lift and carry 10 pounds maximum. He is able to stand and walk 4 hours and sit 6 hours with at will position changes. He is able to all postural occasionally [*sic*] such as climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling. He is able to perform handling and fingering frequently bilateral. He is able to understand, remember and carry out simple routine and mildly complex tasks. He is to have no interaction with public. He should be able to interact with co-workers limited to occasionally in an essential isolated environment and with only a small group of 1-2 people, and only occasional contact with supervisors. (AR 22).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ determined that Petitioner could not perform past relevant work but that there are jobs that exist in significant numbers in the national economy that the claimant could have performed and

**MEMORANDUM DECISION AND ORDER - 6**

therefore, he is not disabled. (AR 28-29).

**B.     Analysis**

### 1.     Medical Opinions from Treating and Examining Psychologists

Petitioner takes issues with the ALJ's treatment of Dr. Phillips's opinion. Dr. Phillips is Petitioner's treating psychologist. Petitioner contends the ALJ has not given valid reasons for rejecting Dr. Phillips's opinion, especially since his opinion is not contradicted. Petitioner points out that the ALJ's treatment of Dr. Phillips's opinion is unclear; in one section he states "some weight" is given to it, in another that "little weight" is given to it. (AR 27, 28). Petitioner argues that the ALJ erroneously favors the conclusions of the psychological expert who testified at the hearing, Dr. Veraldi, over Dr. Phillips's opinion and this is not "substantial evidence" that can outweigh the evidentiary value of a treating source's opinion.

Ninth Circuit case law distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the

**MEMORANDUM DECISION AND ORDER - 7**

treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

When addressing Dr. Phillips's opinion, the ALJ states Dr. Phillips diagnosed claimant with "panic disorder without agoraphobia, social phobia, dysthymic disorder, insomnia related to depression and anxiety, and personality disorder" and gives the opinion little weight "because the claimant's attorney requested the consultative examination, the findings are inconsistent with the totality of the record, and the MMPI results demonstrated 'over reporting' yet Dr. Phillips did not segregate out those factors or even attempt to reconcile them in his report." (AR 27.) In another section of her decision, the ALJ stated she gave "some" weight to Dr. Phillips' opinion. The ALJ noted, at one point in the decision, that there is "no evidence that Dr. Phillips ever saw the claimant between the initial evaluation in 2004 and the subsequent evaluation in 2011." (AR

**MEMORANDUM DECISION AND ORDER - 8**

27.)

The ALJ needs to provide clear and convincing reasons for rejecting the opinion of a treating physician that is not contradicted by another doctor. If the treating physician's opinion is contradicted in the record, the ALJ must provide "specific and legitimate" reasons for rejecting it.

Even if this Court accepts the possibility of contradictory evidence to Dr. Phillips' opinion, such that the "clear and convincing reasons" standard does not attach, the reasons given by the ALJ nonetheless do not satisfy the "specific and legitimate" requirement for rejecting the opinion of a treating physician. The ALJ stated that there was "no evidence Dr. Phillips ever saw the claimant between the initial evaluation in 2004 and subsequent evaluation in 2009." (AR 27.) However, Petitioner had eight counseling sessions with Dr. Phillips following his initial evaluation in 2004. (AR 697-704). Another reason the ALJ gave for assigning little weight to Dr. Phillips's opinion is because the MMPI results demonstrated "over reporting" yet Dr. Phillips did not attempt to reconcile those factors in his report. This is inaccurate. In his 2011 report, Dr. Phillips did note that the results of the MMPI-2-RF validity scale raises questions about the possibility of over-reporting. (AR 686). However, Dr. Phillips went on to say that "in individuals with corroborating evidence of dysfunction this may be a credible report of symptoms." (AR 687). Also, even though the ALJ states Dr. Phillips' opinion is "inconsistent with the totality of the record," she does not cite any specific inconsistencies. Even the expert called by the ALJ at the hearing, Dr. Veraldi, stated the consensus was "an anxiety disorder, perhaps a social phobia, a panic disorder with agoraphobia . . . the major diagnosis does seem to be the anxiety spectrum disorders" (AR 56). While Dr. Veraldi did review the entire

**MEMORANDUM DECISION AND ORDER - 9**

medical record (AR 55-56), Dr. Phillips reviewed several evaluations, including those from Dr. Kadrmas (psychiatrist), Dr. Alexander (psychologist), Dr. Sakai (rheumatologist), Dr. Keane (neurologist), Dr. Stoutin (pain management), and Nurse Ziegeldorf. (AR 682-683). Dr. Veraldi testified, with respect to Petitioner's social phobias and anxieties:

> That is ranging in the, the moderate to marked, in my mind, and I think it would depend on the type of employment, and whether or not the employment accommodate what seems to be real discomfort that he is reporting with being around people.

(AR 57). There is no real conflict between Dr. Phillips's opinion and Dr. Veraldi's.

The ALJ also largely discounted Dr. Phillips's opinion for the reason that the "claimant's attorney requested the consultative examination," which is not a valid justification for rejecting that opinion. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.") The reasons provided by the ALJ are not specific and legitimate reasons for rejecting an opinion of a treating physician.

Petitioner also takes issue with the ALJ's treatment of examining psychologist Dr. Alexander's opinion. While the ALJ purported to give "considerable weight" to Dr. Alexander's opinion, Petitioner argues the ALJ's RFC finding does not incorporate all of the limitations found by Dr. Alexander. Specifically, Dr. Alexander noted "marked" impairments in Petitioner's ability to interact appropriately in the workplace and public, adapt to stress and change, and respond to authority and opined that he "may be able to work in an environment without significant interaction with others". (AR 337). The ALJ's RFC determination stated Petitioner was to "have no interaction with the public," but that he could have limited interaction with co-workers on an occasional basis in an isolated environment of only 1-2 other people and

**MEMORANDUM DECISION AND ORDER - 10**

with only occasional supervisor contact. (AR 22). The Court finds there is no inherent conflict in the ALJ's RFC determination and the opinion of Dr. Alexander. Although stated in slightly different terms, the ALJ has given 'considerable weight' to Dr. Alexander's opinion by placing strong restrictions on Petitioner's interactions with others in the workplace. (AR 22). The Court does not find any error in the ALJ's RFC determination as to incorporating Dr. Alexander's assessment.

### 2. Nurse Ziegeldorf's Opinion

Petitioner contends that the ALJ improperly rejected the opinion of his treating nurse practitioner, Ms. Ziegeldorf. The ALJ afforded "little weight" to Ms. Ziegeldorf's opinion because:

> [S]he is a [nurse practitioner] which is not an acceptable medical source, as defined in 20 C.F.R. 416.913(a). Morever, she provided an opinion as to disability "unable to work permanently" which is an issue reserved to the commissioner of the Social Security Administration (SSR 06-3p and SSR 96-5p). In addition, no other doctors gave an opinion of medical disability or restrictions of any kind. Morever, Ms. Zeigeldorf gave this opinion in March 2011, when the claimant's date last insured requested disability be established with medical evidence prior to December 31, 2009.

(AR 27).

Under the Social Security regulations, nurse practitioners fall into the category of "other sources who are not acceptable medical sources." 20 C.F.R. § 404.1513(d). While opinions from these sources are not acceptable direct evidence of an impairment, the regulations do allow the claimant to submit information from sources that are "not acceptable medical sources" to help the ALJ to determine the severity of an impairment and "understand how [the claimant's] impairment affects [the claimant's] ability to work." *See* 20 C.F.R. §§ 404.1513(d), (e). The

**MEMORANDUM DECISION AND ORDER - 11**

ALJ still may reject other source testimony by furnishing reasons germane to that particular witness. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Further, in pertinent part, Social Security Ruling 06-03p states: "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" SSR 06-03p, *available at* 2006 WL 2329939. However, this ruling also recognizes that depending on the particular facts in a case, an "opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source' . . ." *Id*. (emphasis added).

The ALJ cannot discount the opinion of Ms. Ziegeldorf simply because it falls into the category of "not an acceptable medical source" for some purposes. Although the ALJ need not accept Ms. Ziegeldorf's opinion as to the ultimate issue of disability, the fact that her position is not considered "an acceptable medical source" is only a justifiable limitation on how that opinion might be considered, not for rejecting the totality of her opinion, which included limitations on sitting and standing, among other things.

Petitioner saw Ms. Ziegeldorf consistently from January 2004 to September 2009. She completed the evaluation of Petitioner's limitations in March 2011. The fact that Ms. Ziegeldorf completed the evaluation in March 2011, when Petitioner's date last insured was December 31, 2009, is another reason the ALJ provides for discounting her opinion. However, this ignores that the evaluation specifically states that the responses are to be based on Petitioner's condition prior to the December 31, 2009 date. (AR 673). Additionally, Ms. Zeigeldorf opines that the level of severity of Petitioner's limitations had been reached at least 3 years earlier. (AR 679).

**MEMORANDUM DECISION AND ORDER - 12**

Finally, the ALJ relies on the opinion of the non-examining medical expert Dr. Moore who testified that he did not see a basis for Ms. Zeigeldorf's limitations that Petitioner cannot sit or stand for more than 2 hours at a time. (AR 27). The ALJ gave great weight to this opinion because "Dr. Moore had the most complete evidentiary record to consider, he has significant medical expertise in this field, and he is knowledgeable about the applicable Social Security Regulations." (AR 28). While the ALJ need not accept Ms. Zeigeldorf's opinion, she cannot simply reject it without reason either. The regulations recognize that there might be circumstances when an opinion of a non-acceptable medical source outweighs that of an acceptable medical source and at the very least, the opinion of a non-acceptable medical source must be rejected for germane reasons which have not been given here.

### 3. Petitioner's Credibility

Petitioner argues that the ALJ's credibility findings are legally insufficient because the ALJ distorted the record, failed to account for evidence contrary to her conclusion, and faulted the Petitioner for not complaining of symptoms not associated with his impairment.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id*. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Id*. The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.

**MEMORANDUM DECISION AND ORDER - 13**

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling (SSR) 96-7p.

The ALJ stated she found Petitioner's subjective complaints were only "partially credible for a variety of reasons." (AR 23). The ALJ noted that some of Petitioner's self-imposed limitations were contradicted by the testimony of his wife and that his actual activity level "is far in excess of stated limitations." (AR 23). For example, the "Function Reports" completed by Petitioner and his wife indicate that he prepares meals daily, that he does many household chores and that they only take the "normal amount of time" to complete. (AR 226-228, 234). There is some truth to this statement based on Petitioner's wife's Function Report and testimony, however the ALJ seems to ignore her statements that after days of more activity, such as moving, he is "done for two days" before he does anything else. (AR 81).

Additionally, the ALJ points out that the MMPI tested administered by Dr. Phillips shows that he has a "tendency to over report symptoms." (AR 23). Again, this misstates the evidence in the record. As discussed above, Dr. Phillips did say that the MMPI indicated this

**MEMORANDUM DECISION AND ORDER - 14**

but that for some individuals with corroborating evidence of dysfunction, it could be a credible report of symptoms so this alone is not enough to discount Petitioner's testimony.

However, the ALJ also notes that Petitioner's daily activities are not limited to the extent one would expect given his complaints of disabling symptoms and limitations. (AR 24). For example, the ALJ notes Petitioner's household activities such as cleaning, cooking, working on his duck calling devices, assists his mother and father in doing minor yard work, takes care of pets, and gardens. (AR 24, 226-228, 234). While Petitioner's work on the duck calling devices does not amount to substantial gainful activity, the ALJ can properly consider the Petitioner's work record in assessing credibility.

Additionally, the ALJ finds that the objective medical findings fail to provide support for his allegations of disabling symptoms and limitations. (AR 24). For example, x-rays conducted in May 2007 indicated that Petitioner's cervical spine was normal and his thoracic spine showed minor degenerative spurring in lower thoracic spine. (AR 25). While lack of medical evidence cannot be the sole reason for rejecting pain testimony, "medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that Petitioner had rejected injections that would help with his pain. (AR 25). Treatment measures taken by Petitioner are also a valid consideration in assessing credibility.

While the ALJ incorrectly restated some of the evidence when making her credibility determination in some instances, for example the results of MMPI, the ALJ also made proper considerations when assessing Petitioner's credibility; she considered inconsistencies between his testimony and conduct, his daily activities, his work record and evidence from physicians.

**MEMORANDUM DECISION AND ORDER - 15**

Where, as here, there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). In other words, if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court reviews the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is supported by the requisite findings and record evidence. On this limited issue, it is, and the Court will not substitute its own assessment for that of the ALJ.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

However, the ALJ did not properly consider all of the evidence. She gave improper reasons for rejecting the opinion of Dr. Phillips, a treating psychologist. A treating psychologist's opinion is entitled to more weight than that of a non-examining psychologist such as Dr. Veraldi. At the very least, the ALJ must provide specific and legitimate reasons for rejecting Dr. Phillips's opinion and she had not done so. Additionally, the fact that Ms. Zeigeldorf is a non-acceptable medical source is not a sufficient reason to reject her opinion, in the context of the issues placed before the ALJ in this case. Even the regulations recognize that

**MEMORANDUM DECISION AND ORDER - 16**

other sources may be given more weight than medical sources under certain circumstances.

This is not to say that this Court conclusively finds that Petitioner is disabled. Relatedly, it is not for this Court to resolve the question of whether Petitioner is disabled when considering all the relevant medical evidence and how Dr. Phillips's and Ms. Zeiegeldorf's opinions may factor into the ALJ's determination. Rather, the Court is charged with reviewing the basis of the ALJ's decision, highlighting those areas that may call into question the decisions reached by the ALJ, and, in doing so, should not be misunderstood as substituting its own judgment for that of the ALJ's.

The Court finds the cumulative nature of the ALJ's decision does not afford the Court confidence that the ALJ fairly considered all the evidence in the record, at least how it is reflected in the decision.

This action is therefore remanded to allow the ALJ to revisit the opinions of Dr. Phillips and Ms. Zeigeldorf.

## V. ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is hereby GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: **March 27, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**